CARLTON, J.,
for the Court:
¶ 1. J.C. Higginbotham appeals the Winston County Circuit Court’s denial of his motion for post-conviction relief (PCR). Higginbotham raises the following issues: whether (1) he received effective assistance of counsel; (2) the circuit court erred by not granting a competency hearing; (3) he knowingly, voluntarily, and intelligently entered a guilty plea; (4) he gave an involuntary confession in violation of his constitutional rights; (5) the circuit court erred by denying his claim without an evidentia-ry hearing; and (6) he was denied due process of law when the circuit court refused to provide him a transcript of his guilty-plea hearing and other records for the filing of his PCR motion as well as all materials requested for this appeal. Finding no error, we affirm.
FACTS
¶ 2. In March 2008, a grand jury before the Winston County Circuit Court indicted Higginbotham for one count of capital murder under Mississippi Code Annotated section 97 — 3—19(2)(d) (Rev.2006) and for one count of armed robbery under Mississippi Code Annotated section 97-3-79 (Rev.2006). On May 1, 2009, Higginbotham entered a guilty plea to capital murder.[1] Thereafter, on December 1, 2009, the circuit court sentenced Higginbotham to life without parole in the custody of the Mississippi Department of Corrections (MDOC). Upon motion of the State, and based upon Higginbotham’s guilty plea to capital murder in count one, the circuit court dismissed count two, the charge of armed robbery.
¶ 3. On November 14, 2011, Higginbotham filed a request for his plea transcript and other records, which was denied. Shortly thereafter, on November *1208 22, 2011, Higginbotham filed his PCR motion, which the trial court also denied. The record shows that after filing his PCR motion, Higginbotham was granted in for-ma pauperis status and given a copy of his plea colloquy, plea petition, exhibits attached to his PCR motion, his motion for discovery, and the order denying the motion for discovery.
¶ 4. Higginbotham now appeals.
STANDARD OF REVIEW
¶ 5. “When reviewing a circuit court’s denial or dismissal of a PCR motion, we will reverse the judgment of the circuit court only if its factual findings are ‘clearly erroneous’; however, we review the circuit court’s legal conclusions under a de novo standard of review.” Boyd v. State, 65 So.3d 358, 360 (If 10) (Miss.Ct.App.2011).
DISCUSSION
I. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 6. Higginbotham first contends that he received ineffective assistance of counsel. Higginbotham alleges that his trial counsel lacked diligence in investigating his history of mental retardation, and he suggests that his trial counsel had an obligation to request a competency hearing. Higginbotham also alleges that his attorney, and the trial court, improperly induced him into entering his guilty plea.
¶ 7. In order to succeed on an ineffective-assistance-of-counsel claim, Higginbotham must prove that his counsel rendered ineffective performance, which prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The record shows that the trial court found that Higginbotham testified at his plea hearing that he was satisfied with his trial counsel’s legal services and advice and that he understood his plea of guilty. Higginbotham’s plea colloquy indicates that his trial counsel did not exert any pressure on him to plead guilty, and that his decision to plead guilty was his own voluntary act. The trial court’s order denying post-conviction relief further reflects that the trial court inquired of defense counsel as to whether he was satisfied that Higginbotham possessed the mental capacity to comprehend, understand, and waive his constitutional rights in pleading guilty. The trial court also provided that it had reviewed Higginbotham’s petition to plead guilty, and his counsel also affirmed the physical and mental capacity of Higginbotham. The trial court cited to Henderson v. State, 89 So.3d 598 (Miss.Ct.App.2011), in finding that Higginbotham failed to submit sufficient evidence to support his asserted claim of incompetency. The trial court also found that, in addition to failing to provide sufficient evidence to support his bare assertion of incompetency to stand trial, the record contradicts Higginbotham’s claims of coercion.
¶ 8. Upon review, we find Higginbotham failed to present sufficient evidence on appeal to place his competency to stand trial in question to support approval by the circuit court of a request for a mental evaluation.[2] Higginbotham, therefore, failed to present sufficient evidence that the outcome of the case would have been different had his trial counsel requested a mental evaluation prior to the entry of his guilty plea.[3] Accordingly, we *1209 find Higginbotham failed to meet the first prong of Strickland by failing to show his trial counsel’s deficient performance in failing to request a competency hearing, and he failed to meet the second prong of Strickland in failing to show prejudice. This issue is without merit.
II. COMPETENCY HEARING
¶ 9. Higginbotham argues that the circuit court erred by failing to order a competency hearing prior to his guilty plea and prior to the denial of his PCR motion.
¶ 10. Uniform Rule of Circuit and County Court 9.06 states in part: “If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination.... ” The record shows that neither Higginbotham nor his defense counsel at trial asserted a request for a competency hearing before the trial court. The record reflects that Higginbotham displayed competency to stand trial and displayed in his plea colloquy by his responses to the trial court that his guilty plea was voluntary, knowing, and intelligent.
¶ 11. Higginbotham’s plea colloquy shows that the circuit court specifically questioned both Higginbotham and his trial counsel as to Higginbotham’s mental capacity. The circuit court questioned whether Higginbotham suffered from any disabilities of the mind and whether he had the mental capacity to comprehend, understand, and waive his constitutional rights. See Vanwey v. State, 55 So.3d 1133, 1136 (¶ 6) (Miss.Ct.App.2011); Lokos v. Capps, 625 F.2d 1258, 1264-69 (5th Cir.1980). The record shows that Higginbotham’s counsel indicated during the plea colloquy that he had read the plea petition to his client and that Higginbotham understood the consequences of pleading guilty to the charge. See, e.g., Harden v. State, 59 So.3d 594, 601-03 (¶¶ 14-19) (Miss.2011).
¶ 12. In Hearn v. State, 3 So.3d 722, 728 (¶¶ 14-15) (Miss.2008), the Mississippi Supreme Court addressed the test for competency to stand trial. In order to be deemed competent to stand trial, a defendant must be one:
(1) who is able to perceive and understand the nature of the proceedings; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity of the case.
The United States Supreme Court had defined the competency standard to stand trial as being “whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.” Id. (citation omitted).[4] Additionally, in Billiot v. State, 655 So.2d 1, 11 (Miss.1995), the supreme court recognized its previous holding that
*1210 [w]hen the trial court has made a finding that the evidence does not show a probability that the defendant is incapable of making a rational defense, we will not overturn that finding unless we can say, from the evidence, that the finding was manifestly against the overwhelming weight of the evidence. The evidence must show more than a possibility that defendant is incompetent to stand trial — the evidence must go further until it appears to the trial court that there is a probability that defendant is incapable of making a rational defense. In this initial inquiry, the trial judge must weigh the evidence and be the trier of facts.
¶ 13. In Knox v. State, 901 So.2d 1257, 1266 (¶¶ 30-31) (Miss.2005), a similar case to the case at bar, the supreme court denied a petition for post-conviction relief where the appellant asserted that he lacked the requisite competency to stand trial based upon a head injury, as reflected in his attempt to gain Social Security disability benefits. The Knox court found that this evidence failed to show that the appellant was incompetent to stand trial, and, therefore, the appellant failed to present sufficient evidence for relief on the basis of lacking competency to stand trial. Id. at (¶ 30). The Knox court explained that the appellant failed to present any affidavits from a physician or other mental health professional, or other medical evidence showing he was insane or incompetent to stand trial. Id.; see Prater v. State, 18 So.3d 884, 894-95 (¶¶ 37-39) (Miss.Ct.App.2009) (mildly retarded defendant found competent to stand trial).
¶ 14. Higginbotham bears the burden of proof to show by substantial evidence that his competency to stand trial is in question. See Vanwey, 55 So.3d at 1136 (¶ 6). As acknowledged above, we will not overturn the trial court’s decision to deny relief unless the decision is against the overwhelming weight of the evidence. See Billiot, 655 So.2d at 11. Keeping this standard in mind, we find no abuse of discretion in the trial court’s determination that Higginbotham failed to present sufficient grounds to bring his competency reasonably in question, and thus failed to make the required showing that he lacked the requisite competency to enter a valid guilty plea. See Vanwey, 55 So.3d at 1136 (¶ 6) (providing guidance as to when a defendant must undergo a mental evaluation prior to standing trial or entering a guilty plea). Upon review of the record, we further find no abuse of discretion in the trial court’s determination that Higginbotham entered a voluntary, knowing, and intelligent guilty plea. See Richardson v. State, 767 So.2d 195, 203 (¶ 41) (Miss.2000) (“[OJnce the trial court has made a finding that the evidence does not show a probability that the defendant is incapable of making a rational defense, the decision will not be overturned unless the finding was manifestly against the overwhelming weight of the evidence.”).[5] This issue is without merit.[6]
III. VALID GUILTY PLEA
¶ 15. Higginbotham also contends that he failed to enter a knowing and voluntary guilty plea due to his trial counsel’s failure to investigate his mental capacity and advise him that even if he were *1211 convicted of capital murder, he would not be sentenced to death, because of his mental retardation. Higginbotham also claims that his plea was coerced, and that his trial counsel and the trial court misrepresented the sentences available to him. When considering whether a plea is entered freely and voluntarily, this Court looks to see if “the defendant knows what the elements are of the charge against him including an understanding of the charge and its relation to him, what effect the plea will have, and what the possible sentence might be because of his plea.” Kelley v. State, 913 So.2d 379, 382 (¶ 5) (Miss.Ct.App.2005) (citation omitted). “Specifically, the defendant must be told ‘that a guilty plea involves a waiver of the right to a trial by jury, the right to confront adverse witnesses, and the right to protection against self-incrimination.’ ” Id. (citation omitted).
¶ 16. The colloquy from the plea hearing shows that the circuit judge fully questioned Higginbotham on his understanding of the charge against him and his knowledge of the consequences of pleading guilty. Higginbotham indicated that he understood the charge and sentences available and, as a result, pled guilty with full knowledge of the consequences of his guilty plea. The record shows that Higginbotham indicated that he received no force or pressure to enter his guilty plea. The record clearly shows Higginbotham’s advisement of the factual basis for the charge, the maximum sentence he could face, and what he waived in entering his guilty plea. The plea colloquy also reflects that the trial judge advised Higginbotham that he understood that the State was going to recommend a sentence of life without parole if he cooperated with the State. The trial court specifically addressed Higginbotham’s claim of mental retardation and competency in his order denying the PCR motion, which states:
This court has reviewed the transcript of Higginbotham’s guilty plea proceedings, as well as his Petition to Enter Plea of Guilty. Higginbotham testified under oath that he did not have any mental disabilities that would affect his ability to understand the criminal proceedings that were being conducted. He stated the same thing under oath in the Petition to Enter Plea of Guilty. This court had an opportunity to observe Higginbotham during the plea proceedings and has read his responses to this court’s questioning of him during those proceedings. There is nothing from those proceedings that would suggest or in any way indicate that Higginbotham was not mentally competent to enter a guilty plea.
See Patton v. State, 96 So.3d 790, 792-93 (¶ 7) (Miss.Ct.App.2012); Vanwey, 55 So.3d at 1136 (¶ 6) (“The movant bears the burden of proof to demonstrate by sub^ stantial evidence that the defendant is mentally incompetent to stand trial.”). Based on the foregoing, we find that this issue is without merit.
IV. CONFESSION
¶ 17. Higginbotham argues that law-enforcement agents coerced him into making a confession by using threats of physical violence. We recognize, however, that “a valid guilty plea operates as a waiver of all non-jurisdictional rights or defects which are incident to trial.” Swindoll v. State, 859 So.2d 1063, 1065 (¶ 6) (Miss.Ct.App.2003). When Higginbotham entered a valid guilty plea, he explicitly waived any right to suppress the allegedly coerced confession. This issue is without merit.
V. EVIDENTIARY HEARING
¶ 18. Higginbotham argues that the circuit court erred in denying his PCR motion without first conducting an eviden- *1212 tiary hearing. Mississippi Code Annotated section 99-39-11(2) (Supp.2012) provides that a circuit court may summarily dismiss a PCR motion “[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief[.]” The circuit court’s denial of Higginbotham’s PCR motion is consistent with the evidence and testimony presented in the record.[7] It follows that we find that this issue is without merit.
YI. WITHHOLDING OF RECORDS
¶ 19. Higginbotham argues that the trial court erred by denying his request for a copy of the transcript and for other records in order to draft his PCR motion and his appellate brief. The appellate record shows that after Higginbotham filed his PCR motion, he was granted in forma pauperis status and provided his plea petition, exhibits attached to his PCR motion, the motion for discovery, and the order denying the motion for discovery. The appellate record also includes Higginbotham’s guilty-plea transcript. We will briefly review the procedural history of his request for records.
¶ 20. On November 14, 2011, Higginbotham filed a “Motion for all Pertinent Records, Documents, and Especially Plea Hearing Transcript,” which the trial court denied, finding that Higginbotham failed to demonstrate a specific need and offered no good cause as to why he needed or was entitled to a free copy of the requested documents. Higginbotham then filed his PCR motion on November 22, 2011, which was also denied. After the trial court’s denial of his PCR motion, the trial court entered an order on February 7, 2012, allowing Higginbotham to proceed on appeal in forma pauperis. Then, on March 8, 2012, the trial court entered an order that granted in part and denied in part Higginbotham’s motion to supplement the appellate record with certain documents.[8] On April 13, 2012, Higginbotham filed a “Motion to Supplement Record” with this Court, which we dismissed as moot since the record had been supplemented with certified copies as directed by the trial court. We further noted that the supplemental- record was filed with this Court and made available to Higginbotham.
¶ 21. “When a defendant pleads guilty, he bypasses the right to a direct appeal, and he forfeits the right to a free transcript.” Evans v. State, 61 So.3d 922, 926 (¶ 17) (Miss.Ct.App.2011) (citation omitted). “To obtain a free copy of a guilty-plea transcript, a movant has the burden of proving that he has been prejudiced on appeal by not having prior access to such transcript.” Id. “This prejudice can be proven by showing specific need or proving that the transcript was necessary to decide a specific issue.” Id. Because Higginbotham failed to demonstrate a specific need for his request or that the transcript was necessary to decide a specific issue, “the State was not required to furnish a free copy of the transcript from the *1213 guilty-plea hearing.” Id. at 927 (¶ 17). Accordingly, we find no merit to this issue.
¶ 22. THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WINSTON COUNTY.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. The record shows that Higginbotham's trial counsel was court appointed.

. See, e.g., Knox v. State, 901 So.2d 1257, 1266 (¶¶ 30-31) (Miss.2005).

. See Martin v. State, 871 So.2d 693, 697-98 (¶ 17) (Miss.2004) ("The standard for competence to stand trial is whether the defendant *1209 has ‘sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and ‘has a rational as well as factual understanding of the proceedings against him.’ ”); Vanwey v. State, 55 So.3d 1133, 1136 (¶ 6) (Miss.Ct.App.2011) (recognizing that the ultimate decision as to whether defendants must undergo mental evaluations rests with the trial court).

. See James v. State, 86 So.3d 286, 291 (¶ 17) (Miss.Ct.App.2012) (discussing the test for competency as previously established by the Mississippi Supreme Court): Henderson, 89 So.3d at 603 (¶ 23).

. See also Staten v. State, 989 So.2d 938, 946 (¶ 18) (Miss.Ct.App.2008); Kelley v. State, 913 So.2d 379, 382 (¶ 5) (Miss.Ct.App.2005).

. See Knox, 901 So.2d at 1266 (¶ 30) (discussing sufficiency of evidence required to raise question of lack of competency to stand trial in acknowledging the absence of any affidavits from a physician or mental health professional, or other medical evidence showing incompetency).

. See Harden, 59 So.3d at 601-03 (¶¶ 14-19); Knox, 901 So.2d at 1266 (¶ 30).

. As stated, the trial court found that Higginbotham’s plea petition, the exhibits attached to his PCR motion, the motion for discovery, and the order denying the motion for discovery should be included in the appellate record. The court, however, found that the docket sheet from Higginbotham's criminal case, the plea petitions of co-defendants, and the motions filed by counsel prior to sentencing should not be included in the appellate record, since these items were not considered by the trial court when ruling on the PCR motion. Additionally, the trial court stated that no pre-sentence investigation existed to include in the appellate record.